UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 05-13558 |
| | : | CHAPTER 7 |
| LOCKWOOD AUTO GROUP, INC., | : | |
| DEBTOR | : | |
| | : | |
|   RICHARD W. ROEDER, ESQ., | : | ADVERSARY NO. 06-1100 |
|   Plaintiff | : | |
|       VS. | : | DOCUMENT NO. 1 |
|   BARBARA A. LOCKWOOD AND | : | |
|   FIRST NATIONAL BANK OF PA, | : | |
|   Defendants | : | |

APPEARANCES:

RICHARD W. ROEDER, ESQ., TITUSVILLE, PA, TRUSTEE AND ATTORNEY PRO SE
JOHN C. MELARAGNO, ESQ., ERIE, PA, ATTORNEY FOR BARBARA A. LOCKWOOD
RYAN A. CHRISTIE, ESQ. AND JAMES R. WALCZAK, ESQ., ERIE, PA, ATTORNEY FOR FIRST NATIONAL BANK OF PA
RICHARD C. MAIDER, ESQ., ALBANY, NY, ATTORNEY FOR DAIMLER CHRYSLER FINANCIAL SERVICE AMERICAS, LLC

WARREN W. BENTZ, U.S. BANKRUPTCY JUDGE

MAY 31, 2007

## OPINION

### Introduction

     Lockwood Auto Group, Inc.("Lockwood Auto" or "Debtor") filed a voluntary Petition under Chapter 11 of the Bankruptcy Code on October 3, 2005 ("Filing Date"). By Stipulation and Consent Order entered on the docket on December 14, 2005, the Court directed the appointment of a Chapter 11 Trustee. Richard W. Roeder, Esq. was appointed as Chapter 11 Trustee and, after investigation, moved to convert the case to Chapter 7. The case was converted to Chapter 7 by Order dated March 2, 2006. Richard W. Roeder, Esq. continues to serve in the

capacity of Chapter 7 Trustee (the "Trustee").

On March 9, 2006, the Trustee commenced the within action with the filing of a Complaint against Barbara A. Lockwood ("Barbara") and First National Bank of PA ("FNB") to recover a preference/fraudulent conveyance and to compel turnover of property to the estate (the "Complaint").

Barbara filed an Answer to the Complaint.  FNB filed an Answer and a Cross-Claim against Barbara.  Barbara filed an Answer to the Cross-Claim.  At a status conference held on October 16, 2006, the parties agreed that the record reflects no genuine issues of disputed facts.  Presently before the Court are cross Motions for Summary Judgment by the Trustee and FNB.

Summary Judgment Standard

Fed.R.Civ.P. 56(c) made applicable to these proceedings pursuant to Fed.R.Bankr.P. 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 147 F3d 471, 482 n.1 (3d Cir.2001) citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Undisputed Facts

Lockwood Auto was incorporated in 2001 for the purpose of selling and trading both new and used vehicles. Barbara is the President and sole shareholder of Lockwood Auto.[1]

Lockwood Auto operated a new and used vehicle dealership in Girard, Pennsylvania, under a sales and service agreement with Daimler Chrysler Motors Corporation.

Daimler Chrysler Financial Services North America LLC ("Daimler") provided financing to Lockwood Auto. Barbara personally guaranteed the obligations of Lockwood Auto to Daimler. In early 2003, Daimler became concerned that Lockwood Auto failed to meet the minimal capitalization requirements required by Daimler. Daimler, Lockwood Auto and Barbara agreed that Lockwood Auto had an immediate need for the investment of working capital in the amount of $250,000. Subject to the terms and conditions set forth in a Recapitalization and Loss Replacement Agreement dated February 7, 2003 between Daimler, Lockwood Auto and Barbara, Daimler was willing to forbear from limiting, suspending or terminating Lockwood Auto's lines of credit. The Recapitalization Agreement required Lockwood Auto and Barbara, by February 20, 2003, to invest at least $100,000 in additional working capital and if the $100,000 was invested, then Lockwood Auto and Barbara would have 90 days to obtain a capital investment in an amount sufficient to meet the standards of Daimler.

The Recapitalization Agreement further provides that:

> Said Required Investment shall be in the form of either an actual capital investment, or a subordinate loan in the amount of the Required Investment. In the event the Required Investment is in the form of a loan, the lender shall execute DaimlerChrysler Services' standard Subordination Agreement. In the event any of the Debtors is the lender, this agreement shall effect a subordination

---

[1] In 2002, Barbara gifted one share of Lockwood Auto to each of her children. Those shares were returned to Barbara prior to the filing of Lockwood Auto's bankruptcy in 2005.

of the loan to Lockwood's obligations to DaimlerChrysler Services as though such standard Subordination Agreement had been executed.

On February 12, 2002, Barbara borrowed $100,000 from National City Bank of Pennsylvania ("NCB").[2] In March, 2002, Barbara approached FNB regarding the possibility of a loan. Barbara advised FNB that Daimler demanded additional capital on Lockwood Auto's books. On March 20, 2002, FNB sent a letter to Barbara which outlined the proposed transaction. The letter states FNB's understanding of the transaction:

> The purpose of this letter is to document various discussions you have had recently with First National Bank of Pennsylvania regarding an investment you are contemplating making into Lockwood Auto Group, Inc. The transaction, as we understand it, is as follows:
> 1. First National Bank of Pennsylvania would lend you, individually, $100,000.00.
> 2. You would invest the $100,000.00 into Lockwood Auto Group, Inc.
> 3. Lockwood Auto Group, Inc. would invest the $100,000.00 in a Certificate of Deposit with First National Bank of Pennsylvania and pledge the Certificate of Deposit as collateral for the loan to you.

David Slomski, Vice President of Business Banking for FNB ("Slomski"), advised Barbara that, although such a transaction was possible, he did not know why it would help. Slomski states that "[Barbara] further indicated that [Daimler] had approved this arrangement as meeting [Daimler] requirements." Barbara states in her Answers to Interrogatories that "[i]t is believed that [Daimler] was not aware of this transaction" and Daimler states that it was not aware of the loan transaction.

On April 11, 2002, Barbara borrowed $100,000.00 from FNB (Loan No. 42656035). To evidence this loan, Barbara executed a Promissory Note dated April 11, 2002, in the amount of $100,000.00. The loan proceeds were then invested into Lockwood Auto and used by Lockwood

---

[2] Similar issues are involved with the NCB loan. NCB seeks relief from the automatic stay to set off amounts that it holds in a certificate of deposit.

4

Auto to fund a Certificate of Deposit account with FNB.  Lockwood Auto then granted FNB a security interest in the CD Account (No. 100356829) to secure Barbara's indebtedness pursuant to Loan No. 42656035.  The granting of the security interest in the CD account to FNB was evidenced by: (1) an Assignment of Deposit Account,  (2) a Corporate Resolution to Grant Collateral, and (3) possession of the CD account by FNB.

When Loan No. 42656035 matured in April of 2003, it was replaced by Loan No. 42950945, as evidenced by a Promissory Note dated April 16, 2003, in the amount of $100,000.00.  The loan proceeds were then invested into Lockwood Auto and used by Lockwood Auto to fund a Certificate of Deposit account with FNB.  Lockwood Auto then granted FNB a security interest in the CD account (No. 100356829) to secure Barbara's indebtedness pursuant to Loan No. 42950945.  The granting of the security interest in the CD account to FNB was evidenced by: (1) an Assignment of Deposit Account, (2) a Corporate Resolution to Grant Collateral and (3) possession of the CD account by FNB.

In April, 2004, Loan No. 42950945 matured and was paid in full, at Barbara's direction, with the proceeds of CD Account No. 100356829.

On July 16, 2004, Barbara again borrowed $100,000.00 from FNB (Loan No. 43141850).  To evidence this loan, Barbara executed a Promissory Note dated July 16, 2004, in the amount of $100,000.00.  The loan proceeds were then invested into Lockwood Auto and used by Lockwood Auto to fund a Certificate of Deposit account with FNB.  Lockwood Auto then granted FNB a security interest in the CD account (No. 100593853) to secure Barbara's indebtedness pursuant to Loan No. 43141850. The granting of the security interest in the CD account to FNB was

evidenced by: (1) an Assignment of Deposit Account, (2) a Corporate Resolution to Grant Collateral and (3) possession of the CD account by FNB.

On July 30, 2004, Barbara borrowed an additional $100,000.00 from FNB as evidenced by a Promissory Note dated July 30, 2004, in the amount of $100,000.00 (Loan No. 43149810). The loan proceeds were then invested into Lockwood Auto and used by Lockwood Auto to fund a Certificate of Deposit account with FNB. Lockwood Auto then granted FNB a security interest in the CD account (No. 100597105) to secure Barbara's indebtedness pursuant to Loan No. 43149810. The granting of the security interest in the CD account to FNB was evidenced by: (1) an Assignment of Deposit Account, (2) a Corporate Resolution to Grant Collateral and (3) possession of the CD account by FNB.

When Loan Nos. 43141850 and 43149810 matured in July of 2005, Barbara rolled the indebtedness into a new loan as evidenced by Promissory Note in the amount of $200,000.00 dated July 29, 2005 (Loan No. 43704270). Likewise, CD Account Nos. 100593853 and 100597105 were rolled into a new CD Account (No. 100806034). Lockwood Auto then granted FNB a security interest in CD Account No. 100806034 to secure Barbara's indebtedness pursuant to Loan No. 43704270. The granting of the security interest in the CD account to FNB was evidenced by an Assignment of Deposit Account and possession of the CD account by FNB.

Lockwood Auto filed its bankruptcy Petition on October 3, 2005. By a written document dated October 3, 2005, Barbara directed FNB to redeem CD Account No. 100806034 in order to pay down the amount due and owing on Loan No. 43704270. FNB received the faxed document from Barbara on October 4, 2005 and applied (set-off) the proceeds of CD Account No.

100806034 to Loan No. 43704270 on that same day, unaware that Lockwood Auto had filed its Petition.

On its Balance Sheet, Lockwood Auto reflected the CDs as a cash asset with a corresponding entry reflecting an equivalent amount as additional paid in capital. Lockwood Auto failed to show an encumbrance by FNB against the CDs on its financial statement.

Barbara filed a separate voluntary Petition under Chapter 11 of the Bankruptcy Code on August 11, 2006.

### Trustee's Position

Lockwood Auto owed no money to FNB. Barbara borrowed the monies from FNB. She invested the monies in Lockwood Auto in the form of paid-in-capital. Lockwood Auto pledged the Certificate of Deposit to FNB to secure Barbara's note. The Trustee asserts that the application of the Certificate of Deposit which Lockwood Auto held in its name to the obligation of Barbara to FNB constitutes a preference.

The Trustee further posits that Barbara and FNB engaged in inequitable conduct in inducing Daimler to continue to do business with Lockwood Auto by setting up an unused and unusable Certificate of Deposit which was shown as an asset of cash on deposit on Lockwood Auto's financial statement without any corresponding entry or notation that the CD was encumbered and had been pledged to FNB. The Trustee posits that FNB does not have a valid assignment; that there was no corporate approval of the assignment that took place 66 days before the Filing Date. The Trustee asserts that any claim that FNB might have should be equitably subordinated to the claims of other creditors in the case.

The Trustee's turnover claim is directed at FNB. The Trustee posits that FNB had no right to the CD which it transferred to itself postpetition and which was applied to a prepetition obligation, made while Lockwood Auto was in Chapter 11, without Court permission and without corporate authorization.

### FNB's Position

FNB argues that the Trustee is not entitled to turnover of the proceeds of the CD. It posits that FNB had a valid security interest in the CD; that Lockwood Auto's pledge of the CD was supported by valid and adequate consideration; that Lockwood Auto's pledge of the CD was properly authorized by the corporation; that FNB's security interest was perfected by control of the CD account; that its security interest has priority over all conflicting security interests; and that FNB engaged in no fraudulent conduct or inequitable behavior which would support the equitable subordination of its claim.

### Barbara's Position

Barbara concludes that the monies in the CD account were appropriately paid to FNB and that there should be no turnover of the funds to the Trustee. Barbara posits that the CD was her property and not the property of Lockwood Auto; that Lockwood Auto received the same consideration for the payment to FNB as it paid at the time of its receipt of the CD; that the debt to FNB was not an obligation of Lockwood Auto, but rather an obligation of Barbara and, as such, the transfer of the CD was not made for or on account of an antecedent debt or, in the alternative, if the debt was an obligation of Lockwood Auto, the payment was on a secured claim

and, as such, does not constitute a preference as FNB had priority over all other creditors; and that there was no fraudulent intent or an intent to hinder, delay or defraud any creditors.

As for FNB's cross-claim against Barbara, Barbara denies that she should be required to repay the loan if FNB is ordered to turn over the proceeds of the CD to the Trustee. Barbara posits that she took all steps available to protect the interests of FNB in the CD; that the transaction was suggested and/or approved by FNB; that she understood that the CD stood as collateral for the loan; and that FNB structured the transaction, prepared all the papers for the loan, and advised Barbara that all of the paperwork had been properly prepared and would protect her personally. Accordingly, Barbara states that any loss should be borne by FNB.

<u>Discussion</u>

The Trustee argues that the transfer of the CD account from Lockwood Auto to FNB is avoidable under 11 U.S.C. §549 as being a transfer of property after the October 3, 2005 commencement of the cases. However, the real transfer occurred when the CD account was pledged to FNB as security. On October 4, 2005, one day after bankruptcy, FNB set off the account, but it was only enforcing its perfected security interest in the collateral. The setoff was accomplished by FNB without obtaining relief from the automatic stay. However, it had no notice or knowledge of the bankruptcy. No one was harmed. Had there been no other factors, the taking of the account by FNB would have been lawful.

The Trustee's assertion that FNB was the beneficiary of a fraudulent transaction stands on a different footing, however. Lockwood Auto owed nothing to FNB. Lockwood Auto got $100,000 (later $200,000) from Barbara; then, Lockwood Auto donated that sum to FNB to hold

as collateral for FNB's loan to Barbara. Lockwood Auto received no consideration from FNB for the transfer. Under 11 U.S.C. §548(a)(1)(A), a transfer by a debtor may be avoided where the debtor received less than a reasonable value in exchange for such transfer, where the debtor was insolvent on the date of the transfer. Here, it is clear that the Debtor was insolvent at all material times, and received no consideration for its transfer of $200,000 to FNB.

FNB might argue that these dealings were all interrelated, that the deals were each made with all parties present at a meeting in the board room at the bank, and that FNB's loan to Barbara was adequate consideration for the Debtor's pledges of the CD account. However, 11 U.S.C. §548(c) provides that a transferee who takes for value and in good faith "has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee. . .gave value to the Debtor in exchange for such transfer or obligation." Thus, the supporting consideration, if it is to benefit FNB, must have flowed to the Debtor. Plainly, it did not. It is clear that the transfer of the $200,000 CD account by the Debtor to FNB, otherwise legally valid, but without an adequate consideration to the Debtor, Lockwood Auto, is therefore voidable and void as to the Trustee.

We need make no findings as to the state of mind of the FNB officers. The Trustee may avoid such transfer under 11 U.S.C. § 548(a)(B) whether or not there was an evil intent.

We do conclude, however, that the purpose of the circular transaction was to deceive Daimler by inducing it to believe that the shareholders of Lockwood Auto had injected $200,000 of capital into Lockwood Auto, and thus Daimler extended additional credit and allowed Lockwood Auto to continue to operate even though its net worth had declined to a position below Daimler's standard requirements.

Even if it can be hypothesized that Lockwood Auto received consideration for its transfer to FNB – in that Lockwood Auto got the $200,000 from Barbara, it is apparent that Lockwood Auto immediately gave up that $200,000 – before the parties left the table in the Bank's board room. It is apparent that Lockwood Auto transferred the $200,000 in Certificate of Deposit to FNB without receiving an adequate consideration. FNB will be directed to turn over the $200,000 CD with interest to the Trustee.[3]

FNB asserts a claim against Barbara and has filed a proof of claim in Barbara's Chapter 11 case. If Barbara continues to assert that she has no obligation to FNB because of FNB's actions and/or advice, those disputed facts can be processed through the claim objection process in Barbara's case, if appropriate, once it is determined if and what type of distribution may be available to unsecured creditors in that case.

An appropriate Order will be entered.

       /s/ Warren W. Bentz
       Warren W. Bentz
       United States Bankruptcy Judge

c: Richard W. Roeder, Esq.
John C. Melaragno, Esq.
Ryan A. Christie, Esq.
James R. Walczak, Esq.
Richard C. Maider, Esq.

---

[3] The Trustee also asserts that there was a preference payment when the CD in the name of Lockwood Auto was applied to Barbara's obligation post petition. Having determined that FNB must turn over the proceeds of CD Account 100806034 as a fraudulent conveyance, we need not address the preference issue.

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 05-13558 |
| | : | CHAPTER 7 |
| LOCKWOOD AUTO GROUP, INC., | : | |
| DEBTOR | : | |
| | : | |
| RICHARD W. ROEDER, ESQ., | : | ADVERSARY NO. 06-1100 |
| Plaintiff | : | |
| VS. | : | DOCUMENT NO. 1 |
| BARBARA A. LOCKWOOD AND | : | |
| FIRST NATIONAL BANK OF PA, | : | |
| Defendants | : | |

## ORDER

This 31st day of May, 2007, in accordance with the accompanying Opinion, it is ORDERED as follows:

1. The Motion for Summary Judgment filed by First National Bank of Pennsylvania is REFUSED.

2. The Motion for Summary Judgment filed by Richard W. Roeder, Esq., Trustee, as Plaintiff, is GRANTED and First National Bank is ORDERED to turn over to the Trustee the proceeds of CD Account 100806034.

3. First National Bank's Cross-Claim against Barbara Lockwood may be concluded by resolution of the proof of claim filed by First National Bank in the Barbara Lockwood Chapter 11 at Case No. 06-10941, to which Barbara Lockwood may later file an objection, if appropriate.

    /s/ Warren W. Bentz
Warren W. Bentz
United States Bankruptcy Judge