IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| LOCKWOOD AUTO GROUP, INC. | : | Case No. 05-13558-TPA |
| Debtor | : | Chapter 7 |
| | : | |
| RICHARD W. ROEDER, | : | |
| Plaintiff | : | Adv. No. 06-1100 |
| | : | |
| v. | : | Related to Document No. 84 |
| | : | |
| BARBARA A. LOCKWOOD and | : | |
| FIRST NATIONAL BANK of | : | |
| PENNSYLVANIA, | : | |
| Defendants. | : | |

*Appearances:*  John M. Steiner, Esq., for the Debtor
Richard W. Roeder, Esq., Chapter 7 Trustee, Plaintiff
John C. Melaragno, Esq., for Defendant Barbara Lockwood
James R. Walczak, Esq., for Defendant First National Bank

## MEMORANDUM OPINION

Presently before the Court is a ***Motion for Summary Judgment*** ("Motion"),

Document No. 84, filed by Defendant First National Bank of Pa. ("FNB").  After consideration of

the various filings by the Parties, the Court will deny the *Motion* for the reasons provided below.[1]

---

[1]    The Court's jurisdiction under *28 U.S.C. §§157* and *1334* was not at issue.  This is a core
proceeding pursuant to *28 U.S.C. §§157(b)(2)(K)* and *(O)*.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant, underlying facts were previously set forth by this Court in an opinion on prior cross-motions for summary judgment. *See Memorandum Opinion and Order of May 31, 2007* ("2007 Opinion"), Document No. 32.[2]  Familiarity with the facts is assumed and factual details will not be restated here except as necessary.  Very briefly, the case involves a series of similar triangular transactions that occurred between 2002 and 2005 among the Debtor Lockwood Auto Group, Inc ("LAG"), its principal shareholder Barbara A. Lockwood ("Lockwood"), and FNB.  The transactions arose in the context of LAG's operation of a dealership selling DaimlerChrysler Motors Corporation vehicles which were financed through DaimlerChrysler Financial Services North America, LLC ("Daimler").

In late 2002, early 2003, Daimler became concerned about the financial stability of LAG.  In February 2003 Daimler entered into a "Recapitalization Agreement" with LAG and Lockwood that required additional capital to be invested into LAG.  Plaintiff, Richard W. Roeder, the Chapter 7 Trustee ("Trustee") alleges that the transactions at issue were done to make it appear that LAG had the necessary additional capital to remain viable when it actually did not.

Generally, the transactions were all structured as follows: Lockwood borrowed funds from FNB and then invested them into LAG, which immediately used the invested funds to secure a certificate of deposit ("CD") from FNB.  LAG in turn pledged the CD to FNB as security for the loan that Lockwood had taken out.  The invested funds in the form of the CD were shown as capital

---

[2]    The *2007 Opinion* was authored by the Honorable Warren W. Bentz.  Judge Bentz retired effective September 22, 2009, at which time the case was reassigned to the Undersigned.

2

on LAG's balance sheet, with no indication that it was fully-pledged to FNB. The Trustee alleges that these were financially meaningless transactions whose only purpose was to create the illusion on LAG's financial statements that it possessed additional, available capital to meet the requirements of the Recapitalization Agreement. Shortly after the bankruptcy petition was filed, FNB applied the then-current CD (CD No. 100806034 for $200,000) to satisfy Lockwood's loan obligation.

The *Complaint* originally filed by the Trustee laid out the key facts and requested turnover from FNB but was rather vaguely written as far as the legal theory being pursued against FNB. In the *2007 Opinion*, the Court granted summary judgment in favor of the Trustee on fraudulent transfer grounds pursuant to *11 U.S.C. §548*, requiring FNB to turn over the proceeds of the CD to the Trustee. FNB appealed to the District Court. One of the issues on appeal was whether the basis for the *2007 Opinion* was *Section 548(a)(1)(A)* (actual intent to hinder defraud or delay), or *Section 548(a)(1)(B)* (constructive fraud). The District Court reversed in an Opinion dated March 20, 2008, Document No. 56 ("District Court Opinion"). The District Court found that the *2007 Opinion* was premised on constructive fraud. It then went on to hold that this Court had erred in determining that FNB had not given reasonably equivalent value in exchange for the pledge of the CDs, finding instead, that LAG had received an "indirect benefit" in exchange for its pledge of the CDs to FNB. Since proving a "constructive fraudulent transfer" under *Section 548(a)(1)(B)* requires that there be no equivalent value, the District Court found that the facts in this case do not support such a claim. However, that was not the end of the matter.

The District Court also noted that during the course of the litigation the Trustee had articulated several other possible theories to support recovery of the CD proceeds from FNB,

3

including actual fraud under *Section 548(a)(1)(A)* and equitable subordination.  The District Court therefore remanded this matter to this Court for consideration of those alternative theories.  After the remand, the Trustee was given leave to file an amended complaint.

On September 16, 2008, at Document No. 69, the Trustee filed his *Amended Complaint*.  The *Amended Complaint* sets forth three counts: Count I (fraudulent transfer (actual fraud) under the Pennsylvania Uniform Fraudulent Transfer Act Law ("PUFTA"), *12 Pa. C.S.A. §5101, et. seq.*), Count II (fraudulent transfer (actual fraud) under *Section 548(a)(1)(A)*), and Count III (equitable subordination under *11 U.S.C. §510*).  The Defendants answered the *Amended Complaint*, and thereafter, the Parties engaged in discovery.

On June 22, 2009, FNB filed the *Motion* presently under consideration.  The Trustee has responded and both sides have filed briefs. The Trustee was also given leave to hire a financial services consultant to serve as an expert on September 3, 2009.  On January 15, 2010, he filed an *Offer of Proof*, Document No. 114, setting forth the expected testimony of the consultant. The *Offer of Proof* also listed the areas of inquiry the Trustee plans to explore  in a proposed deposition of David Slomski, the FNB Vice President of Business Banking who was involved in the transactions at issue.[3]   On February 3, 2010, FNB filed a *Reply* to the *Offer of Proof* .  The *Motion* is now ripe for decision.

---

[3]        It might be asked why it is only now, at this rather late stage in the proceeding, that the Trustee is finally seeking to depose such a key witness as Slomski.  As the Court understands it, the Trustee has maintained that he could not effectively depose Slomski until his request to employ a financial expert was approved, something which did not happen until September 2009.  In any event, there has not previously been a discovery deadline set in the case, so the proposed deposition cannot be precluded on the ground that discovery has ended.  Part of the Court's *Order* resolving the *Motion* will set a discovery deadline.

### *Summary Judgment Standard*

For purposes of resolving a summary judgment motion, *Fed.R.Civ.P. 56* is made applicable to adversary proceedings through *Fed.R.Bankr.P. 7056.* Summary judgment is appropriate if the pleadings, depositions, supporting affidavits, answers to interrogatories and admissions that are part of the record demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Bankr.P. 56(c), Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Summary judgment is appropriate if no material factual issue exists and the only issue before the Court is a legal issue. *Earth Data Int'l. of N.C., L.L.C. v. STV, Inc.*, 159 F. Supp.2d 844 (E.D. Pa. 2001); *In re Air Nail Co., Inc.*, 329 B.R. 512 (Bankr. W.D. Pa. 2005). The test under *Fed.R.Civ.P. 56* is "whether the moving party is entitled to judgment as a matter of law." *Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir. 1999) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

In deciding a motion for summary judgment, the Court must construe the facts in a light most favorable to the non-moving party. *United States v. Isley*, 356 F.Supp.2d 391 (D.N.J. 2004). Once the moving party satisfies its burden of establishing a *prima facie* case for summary judgment, the non-moving party must do more than raise some metaphysical doubt as to material facts. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). No issue for trial exists, in fact, unless the non-moving party can adduce sufficient evidence favoring it on the disputed factual issue such that a reasonable jury could return a verdict in its favor. *See Celotex,* 477 U.S. at 322.

## DISCUSSION

### *Insufficient evidence of "knowledge" of, or "participation" in, fraud*

FNB first argues that summary judgment should be granted in its favor with respect to Counts I and II of the *Amended Complaint* because there is no evidence that it had any knowledge of or participated in the alleged fraud perpetrated by Lockwood and LAG against Daimler.[4]

FNB contends that in order for the Trustee to prove a claim of a fraudulent transfer based on actual fraud he must show that FNB had knowledge of the alleged fraud upon Daimler by LAG and/or Lockwood, and that FNB knew its actions would facilitate the alleged fraud. *See* FNB *Brief in Support of Summary Judgment*, Document No. 85 at 11 (hereinafter "FNB Brief"). FNB argues that the Trustee has not produced any evidence that shows FNB: was involved in the preparation of the financial statements submitted to Daimler; knew LAG or Lockwood had made misrepresentations of their financial condition to anyone; or, ever communicated with Daimler. *FNB Brief* at 11. FNB points out that the only evidence of record as to any of these points is an affidavit by Slomski which denies any such knowledge or involvement.

The Trustee does not really dispute that claimed lack of any evidence to show that FNB was an active participant in or intended to engage in fraud against Daimler. Rather, the Trustee claims that the alleged "actual fraud" necessary in this case to support a fraudulent transfer claim was that done by the transferor, Lockwood/LAG.

---

[4] As indicated above,  the District Court previously ruled that FNB gave reasonably equivalent value for the security interest it obtained in the LAG CD.  Therefore, it is clear that the Trustee can assert no viable claim for constructive fraud and must proceed solely under a theory of actual fraud.

The *Bankruptcy Code* and *PUFTA* mirror each other with respect to a cause of action to avoid a transfer based on the Debtor's transfer of assets with an actual intent to hinder, defraud or delay creditors.  *See 11 U.S.C. §548(a)(1)(A)*, *12 Pa. C.S.A. §5104(a)*. The Trustee is correct that the "actual intent" at issue here is that of the transferor, *i.e.*, Lockwood and LAG.  *See In re Pers. & Business Ins. Agency*, 334 F.3d 239, 242 (3rd Cir. 2003) (actual fraud under *Section 548* occurs when the debtor makes the transfer with the intent to hinder, delay or defraud); *In re Rubin Bros. Footwear, Inc.*, 119 B.R. 416, 423 (S.D.N.Y. 1990) (plaintiff must show fraudulent intent on the part of the transferor rather than the transferee).

In order to ultimately prevail on Counts I and II the Trustee must prove that LAG/Lockwood acted with the intent to hinder, defraud or delay creditors. FNB has not pointed to any record evidence that it claims demonstrates an absence of an intent to hinder, defraud or delay on the part of LAG and Lockwood.  On the other hand, the Trustee has submitted evidence showing that LAG and Lockwood did submit financial statements to Daimler which showed the CD as capital of LAG without also disclosing that it was fully encumbered by a security interest.   (Affidavit of John Wegerzyn of Daimler at ¶¶5-7, attached to Document No. 92). Daimler claims it did not approve of the pledge to FNB and believed LAG had sufficient unencumbered capital when it received LAG's financial statement. *Id*.

Although there may be a convincing explanation as to why the transactions at issue were done other than as a deceptive means for LAG to be able to show  the required capital on financial statements that were supplied to Daimler, the Court has not yet heard or seen it.  In keeping

7

with the required treatment of summary judgment motions, and solely for the purpose of the *Motion*,

the Court finds that the Trustee has provided evidence that, when viewed in the light most favorable

to the Trustee as the non-moving party, is sufficient to support a finding of an "actual intent to

hinder, delay and defraud" by LAG and Lockwood in connection with the transactions and the

financial statements. *See also, e.g., Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 563 (3d

Cir. 2002) (questions of intent and state of mind are ordinarily not amenable to summary

adjudication).

FNB has been named as a Defendant in this matter because of its status as a

transferee of the allegedly fraudulent transfer. Again, the *Bankruptcy Code* and *PUFTA* are in

agreement as to the treatment of transferees. *11 U.S.C. §548(c)* provides in relevant part:

> ...a transferee...that takes for value and in good faith has a lien on or may
> retain any interest transferred ...

*11 U.S.C. §548(c).* For the corresponding provision under *PUFTA, see 12 Pa. C.S.A. §5108(a),(d).*

This is an affirmative defense with two elements, value and good faith, upon which the transferee

bears the burden of proof. *In re Foxmeyer Corp.*, 286 B.R. 546, 572 (Bankr. D. Del. 2002). In light

of the District Court's previous decision in this case finding that FNB gave value in exchange for

the security interest in the CDs, the only remaining substantive issue as to whether FNB has a viable

affirmative defense to Counts I and II is thus, whether FNB took the transfer in "good faith."

The *Bankruptcy Code* does not provide a definition of a "good faith" transferee.

Courts that have addressed the issue have concluded that the term defies an easy or precise

definition, such that "good faith" defenses must be evaluated on a case-by-case basis. *In re Burry*, 309 B.R. 130, 136 (Bankr. E.D. Pa. 2004).

A helpful discussion of this issue appears in *Ameriserv Fin. Bank v. Commercebank, N.A.*, 2009 WL 890583 *5-6 (W.D. Pa. 2009). After reviewing the law from this and other circuits, the *Ameriserv* court synthesized several key points concerning a good faith defense by a transferee in a fraudulent transfer case, whether under the *Bankruptcy Code* or *PUFTA*.

First, good faith is determined according to an objective or "reasonable person" standard, and not based on the subjective knowledge or belief of the transferee. Courts thus look to what the transferee objectively knew or should have known concerning the nature of the underlying circumstances involved with the transfer. *Id.* (citing *In re Bayou Group*, 396 B.R. 810 (Bankr. S.D.N.Y. 2008)). Second, once a transferee is on notice of suspicious circumstances regarding a transfer, it is obliged to conduct a diligent investigation which must "ameliorate" the issues that placed it on inquiry notice in the first place. The failure to do so can be fatal to a good faith defense. Third, among the non-exhaustive circumstances that may preclude a finding of good faith are notice of the transferor's fraudulent purpose, an underlying fraud, the transferor's unfavorable financial condition or insolvency, the improper nature of a transaction, and, the voidability of the transfer.

It is apparent that under this standard a transferee is not automatically protected by the good faith defense merely because it had no actual knowledge that a fraud was being perpetrated. The transfer can still be avoided as against the transferee if the circumstances were such that, as a reasonable person, it should have known that there was something suspicious about the transfer but

9

failed to investigate.  In that regard, the Trustee has submitted the *Offer of Proof* as to his financial consultant expert which provides that the expert will opine, *inter alia*, that FNB did not act within normal banking practices in connection with the July 2005 transaction.

FNB argues that the proposed expert testimony is an attempt by the Trustee  to "manufacture" evidence to show FNB did not act in good faith.  It argues that to allow such expert testimony would be, in effect,  to allow testimony as to a determination as to FNB's subjective state of mind, a practice disfavored in the law.  The Court views the proposed expert testimony differently.

As discussed above, the good faith test is based on an objective, not a subjective standard. Starting from that premise, it appears to the Court that the expert testimony as set forth in the Trustee's *Offer of Proof* would be designed to show that a reasonable bank should have known that the transaction in question was not within normal banking practices and was therefore suspect, thus triggering an obligation to make an investigation, and to refrain from the transaction if its concerns were not addressed.  None of this has anything to do with the subjective state of mind of FNB or Slomski.

Furthermore,  the question of what constitutes normal banking practice would seem to be just the sort of technical or other specialized knowledge that would assist the trier of fact in this case.  *See*, *e.g., First Nat'l State Bank of N.J. v. Reliance*, 668 F.2d 725, 731 (3d Cir. 1981) (approving admission of expert testimony as to established customs in the banking industry  in order

to facilitate the determination as to whether bank acted in good faith).[5]   For purposes of this *Motion*

the Court will assume the proposed testimony would be admissible.

Given the anticipated expert testimony, together with the affidavit by John Wegerzyn

of Daimler indicating that Daimler did not authorize a security interest in the CD and believed the

working capital investment was unencumbered, the Court cannot conclude at this time for purposes

of resolving the *Motion* that FNB has carried its burden of proof with respect to the good faith

defense.[6]   The Court concludes that resolution of this issue can only be made after further

development of the facts, and in that regard the proposed deposition of Slomski by the Trustee is

certainly relevant and will be permitted.

Before moving on to the next point, the Court must comment briefly on *In re*

*Northern Merchandise, Inc.,* 371 F.3d 1056 (9th Cir. 2004), a case heavily relied on by FNB.  The

transaction at issue in that case was similar to what occurred here, and the court there did find that

the bank had given value and acted in good faith.  However, the contention by FNB that the facts in

---

[5]         In its *Reply* in opposition to the Trustee's *Offer of Proof*, FNB also suggests that the expert
testimony summarized in the *Offer of Proof* may not be admissible under the standards of *Daubert v. Merrell Dow
Pharm., Inc.*, 509 U.S. 579  (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), although no formal
motion to that effect has been filed.  See Document No. 116.  The Court does not have an expert report or a
deposition from the expert, Mr. Gardner, only the *Offer of Proof*.  The Court's ruling here is thus premised on
essentially a paraphrase by the Trustee as to the expected testimony of the expert.  On that basis, the Court finds, at
least for purposes of deciding the within *Motion*, that the proffered opinion as to whether the transaction met normal
banking standards would be admissible.

[6]         Paragraph 24 of the *Amended Complaint* does give the Court some pause in reaching this
conclusion.  That Paragraph alleges that when Lockwood negotiated the CDs for LAG she told Slomski that Daimler
had approved the arrangement as meeting their requirements.  FNB admitted this Paragraph, and indeed if it is true it
might well be strong evidence in favor of finding that FNB acted in good faith.  However, Lockwood has denied this
allegation in her *Answer* to the *Amended Complaint* and the Wegerzyn Affidavit states that Daimler did not authorize
the "arrangement."  It is a close call, but the Court concludes that the question of what if anything Lockwood may
have told FNB regarding Daimler's knowledge of and approval of the arrangement is best treated as a material
factual dispute, despite the allegation in the *Amended Complaint*.

the present case are "indistinguishable" from *Northern Merchandise* is rejected.  The debtor in that

case did actually have use of the loan proceeds.  Even more significantly, the loan in *Northern*

*Merchandise* appears to have actually been designed as a means to infuse working capital into the

debtor, not merely to give the appearance of additional capital to a third-party as is alleged to have

occurred here with respect to Daimler.  The District Court obviously concluded that *Northern*

*Merchandise* was not dispositive on the good faith issue or it would not have remanded the case to

this Court for further consideration of the actual fraud branch of the fraudulent transfer claim.  This

Court also finds *Northern Merchandise* to be clearly distinguishable and not the blanket "blessing"

of this type of transaction as suggested by FNB.


### *Statute of Limitations*


FNB next argues that summary judgment should be granted in its favor as to Counts

I and II on statute of limitation grounds.  There is no dispute that the bankruptcy petition in this case

was filed on October 3, 2005 and that the applicable statute of limitations under *11 U.S.C. §546(a)*

is two years from the date the petition was filed.  There is likewise no dispute that the original

*Complaint* was filed on May 9, 2006, well within the two-year period.  However, the *Amended*

*Complaint* was not filed until September 16, 2008, well after the two-year period had run, and it is

considerably different from the *Complaint*.[7]  The key issue, therefore, is whether Counts I and II of

---

[7]      When the Trustee sought leave of Court to file the *Amended Complaint* both Defendants initially
opposed that request on grounds which included the same statute of limitations issue raised here.  Subsequently,
however, they agreed to consent to allow the *Amended Complaint* to be filed, but without waiving the right to raise
the same issue later in the case.  Thus, the statute of limitations question has been preserved and is properly before
the Court.

the *Amended Complaint* should be found to relate back to the *Complaint* for statute of limitation purposes.

"Relation back" is addressed in *Fed.R.Bankr.P. 7015*, incorporating *Fed.R.Civ.P. 15(c)*, and provides in relevant part:

(c) **Relation Back of Amendments**

(1) **When an Amendment relates Back**.  An amendment to a pleading relates back to the date of the original pleading when:
    (A) the law that provides the applicable statute of limitations allows relation back; [or]
    (B) the amendment asserts a claim or defense that arose out of  the conduct, transaction, or occurrence set out-or attempted to be  set out-in the original pleading;

Relation back under *Rule 15(c)* "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Mayle v. Felix*, 545 U.S. 644, 659 (2005).  The key inquiry is whether the original pleading gave the defendant adequate notice of the conduct, transaction or occurrence that forms the basis of the claim or defense. As the Supreme Court has explained:

The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitation were intended to provide.  Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief they do require that the pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 150 (1984).  In resolving FNB's defense in this regard, the Court must therefore review the original *Complaint* and see if it provided FNB

13

with sufficient notice of the underlying events constituting the operative facts in support of Counts I and II of the *Amended Complaint*.

Although the *Complaint* is not a model of drafting clarity, when reviewed under the applicable standard, it is clear that sufficient notice was provided.  The *Complaint* refers explicitly to the transactions occurring in July 2004 and July 2005 and even provides the numbers of the pledged CDs in issue. *Complaint* at ¶¶ 6-7, 9-10.  It alleges that these pledges were made with an actual intent to hinder, delay or defraud creditors.  *Id.* at ¶17.  The *Complaint* further refers to *11 U.S.C. §548(a)(1)*, which is the *Bankruptcy Code* provision setting forth both "strains" of fraudulent transfer, constructive and actual.

It is true that the section of the *Complaint* directed specifically to FNB (*Id.* at ¶¶21-24) is entitled "turnover" and in its prayer for relief asks for judgment against FNB '[t]o turnover and surrender to plaintiff trustee the said asset or the proceeds therefrom" without explicitly mentioning fraudulent transfer (or anything else) as the basis for requiring such turnover.  However, this section of the *Complaint* incorporates by reference the other part of the *Complaint*–which does provide the information noted above.  Thus, when the entire *Complaint* is viewed as a whole it is evident that FNB had been named as a defendant because it was the transferee that had been the recipient of the alleged fraudulent transfer. *See City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3rd Cir. 1998) ("courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable.").

14

Counts I and II of the *Amended Complaint* do nothing but provide some additional background and factual details concerning the transactions described in the *Complaint* and articulate legal theories as to why FNB should be required to turn over the proceeds from the CD.

The notice test under *Rule 15(c)* permits an amended pleading to "amplify" the original pleading by including additional factual details so long as the original pleading sets forth the basic conduct, transaction, or occurrence underlying the claims. *See, e.g., USX Corp. v. Barnhart*, 395 F.3d 161, 167-68 (3rd Cir. 2004) (amendments that restate the original claim by amplifying factual circumstances surrounding the pertinent conduct, transaction or occurrence fall within *Fed.R.Civ.P. 15(c)*). Furthermore, the notice test does not require that the prior complaint put the defendant on notice of new or additional legal theories that the plaintiff seeks to pursue, only the facts that support the new theories. *Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 333 (S.D.N.Y. 2009). *See also*, *U.S. ex. rel. Small Business Admin. v. Commercial Tech., Inc.*, 354 F.3d 378, 388 (5th Cir. 2003) (amended complaint asserting claim under Texas Uniform Fraudulent Transfer Act related back to date of original complaint asserting claim under Federal Debt Collections Procedure Act where both arose from transfer of same property); *In re Frank Santora Equip. Corp.*, 202 B.R. 543, 545-46 (Bankr. E.D.N.Y. 1996) (fraudulent conveyance claim in amended complaint related back where it and the preference claim in the original complaint arose from the same underlying transaction); *In re Caremerica, Inc.*, 409 B.R. 737 (Bankr. E.D.N.C. 2009) (amended complaint for fraudulent transfer and preference would relate back where it did not include new transfers or new defendants, but merely provided additional details and clarified claims for relief); *In re Global Crossing, Ltd.*, 385 B.R. 52 (Bankr. S.D.N.Y. 2008) (constructive fraudulent

15

transfer claim in amended complaint related back to original complaint with preference claim where both sought to recover same prepetition payment); *In re Allou Distribs., Inc.*, 379 B.R. 5 (Bankr. E.D.N.Y. 2007) (amended complaint seeking to hold defendants liable as initial transferees, or as immediate or mediate transferees of alleged fraudulent transfers related back to original complaint where same individuals, entities, properties and transfers were the basis for allegations in the original and amended complaints).

FNB cannot plausibly claim to be unfairly surprised that it, as the transferee of an allegedly fraudulent transfer described in the *Complaint*, is now being pursued under a claim of transferee liability.  It is well-recognized that recovery from the transferee is one of the potential avenues for relief by a plaintiff pursuing a fraudulent transfer case.  *See, e.g., United Sates v. Rocky Mountain Holdings, Inc.*, 2009 WL 564437 *3 (E.D. Pa. 2009) (once creditor establishes existence of fraudulent transfer it may, *inter alia*, attach the transferred assets or other property of the transferee). The Court therefore finds that Counts I and II relate back to the *Complaint* under *Rule 15(c)*, i.e., they were filed within the time frame allowed by the applicable statute of limitations.

### *One-year lookback*

FNB raises another "timing" issue that must be addressed, this one dealing solely with respect to the claim in Count II.  At the time the original *Complaint* was filed, the fraudulent transfer provision in the *Bankruptcy Code* was subject to a one-year window, *i.e.*, it only applied to transfers

16

made within one year of the filing date of the petition.  *See* former *11 U.S.C. §548(a)(1).*[8]  Since the

petition was filed on October 3, 2005, the "look back" provisions of *Section 548(a)(1)* can only reach

fraudulent transfers occurring on or after October 3, 2004.  FNB argues that the  "transfer" that is

at issue here took place in July 2004, outside the statutory window, with the events that occurred in

July 2005 merely constituting a "renewal" that was not itself a transfer.  The Trustee counters that

July 5, 2005, is the critical date for purposes of the relevant transfer, a date well within the statutory

window.

In support of its position FNB relies on *Section 548(d)(1)*, which provides in relevant

part:

> For the purposes of this section, a transfer is made when such transfer  is
> so perfected that a bona fide purchaser from the debtor against whom
> applicable law permits such transfer to be perfected cannot acquire an
> interest in the property transferred that is superior to the interest in such
> property of the transferee...

FNB argues that it was "fully perfected at all times," therefore the execution of a promissory note

and assignment of CD on July 29, 2005, did not constitute a new transfer for purposes of *Section*

*548. See* FNB *Reply* in opposition to Trustee's *Offer of Proof*, Document No. 116 at 3.

FNB's attempt to invoke the protection of the one-year window by characterizing the

July 2005  events as simply a "renewal" of the July 2004 transaction is not persuasive, at least based

on the evidence that is before the Court on the *Motion*.  The two promissory notes and the two CDs

---

[8]      This section was subsequently amended to increase this window to two years, but the Parties do
not dispute that the former one-year provision applies in this case.

17

from the July 2004 loans do not contain any language about being "automatically renewed" at the end of their stated terms. *See* Exhibits J, M and Q (Ex. G and O) to FNB's *Motion*.

When the $200,000 promissory note (Loan No. 43704270) dated July 29, 2005, was signed, the July 16, 2004, $100,000 promissory note (Loan no. 43141850) was already almost a month past its maturity date of July 1, 2005. The July 29, 2005 note is identified under a new loan number. It contains no language about being a "renewal" of the two July 2004 notes. (Ex. P to FNB's *Motion*). Likewise, CD 100806034, created on July 27, 2005, is identified under a new number without any indication about being a "renewal" or "rollover" of the two CDs from July, 2004. (Ex. S to FNB's *Motion*[9]).

FNB will have an opportunity at trial to convince the Court that the subject CDs were continuously perfected from July 2004 until the time of filing the petition, but as of now, it has not presented sufficient evidence to justify a grant of the *Motion* on that basis as to Count II. On a more practical level, regardless of how the Court ultimately rules on the one-year "look back" issue with respect to Count II, the case will move forward as to the corresponding *PUFTA* claim in Count I (because it has a four year reach-back period) involving the very same issues. *See In re C.F. Foods, L.P.*, 280 B.R. 103, 109 (Bankr. E.D. Pa. 2002). That reality bolsters the Court's conclusion that summary judgment should not be granted as to Count II.[10]

---

[9]       Interestingly, CD 100806034 itself notes that it is for a one-year term ending on July 27, 2006, and that it will automatically renew at the end of that term unless the owner, LAG, notifies FNB prior to the maturity date or within 10 days thereafter that it does not want the CD to renew. That does not help FNB to establish that CD 100806034 was a renewal of the two CDs from July 2004.

[10]      The Court also has questions about the manner in which FNB obtained perfection of the CDs in this case. Both this Court, in the *2007 Opinion,* and the District Court in the *District Court Opinion,* made statements indicating that FNB was perfected because the CD was a "deposit account" perfected by "control" in that

*Equitable Subordination*

FNB also seeks summary judgment as to Count III, pleaded as a claim of "equitable subordination" under *Section 510* of the *Bankruptcy Code*. FNB argues that no such claim was included as part of the original *Complaint*. It further argues that the Trustee is improperly using *Section 510* to recover monies for the estate, in effect pleading a fraudulent conveyance claim in the "guise of a claim for equitable subordination" not authorized by *Section 510*. Finally, FNB argues

---

the account was maintained at FNB. *See 2007 Opinion* at 9, *District Court Opinion* at 16. However, these remarks were made in passing without analysis, and do not seem to have been essential to the decisions, so they may be viewed as mere dicta and not the law of the case.

State law determines what is required to perfect an interest in property for purposes of *Section 548(d)(1)*. *Butler v. Lomas and Nettleton Co.*, 862 F.2d 1015, 1018 (3rd. Cir. 1988); *In re Leonard*, 418 B.R. 477, 483 (Bankr. S.D. Fla. 2009). It is unclear under Pennsylvania law whether the July 2005 CD should properly be characterized as a "deposit account," which is indeed perfected by control (*see 13 Pa. C.S.A. §9314*), or as an "instrument," which requires "possession" for perfection (*13 Pa. C.S.A. §9313*). A security interest in an instrument may also be perfected by the filing of a finance statement, but there is no evidence that was done in this case. This turns out to be a surprisingly involved question for a "certificated" CD such as the one at issue here. See *13 Pa.C.S.A. §§9102* (definition of "instrument," and comment 12) and *3104(j)* (definition of "certificate of deposit"). It must be noted that the definition of "instrument" begins with the qualifying word "negotiable". Given that the July 2005 CD states on its face that it is "Not Negotiable-Not Transferable", it might be thought  that would automatically take it out of the "instrument" category and make it a "deposit account" by default. That is not necessarily the case, however. As discussed in *McFarland v. Brier*, 850 A.2d 965, 975-77 (R.I. 2004), the majority view is that CDs with this type of legend are nevertheless considered "instruments" for *U.C.C. Article 9* purposes because such certificates are regularly transferred in the business world regardless of the putative "nontransferable"  language. (The *McFarland* court noted that banks have a variety of reasons why they might mark a CD "nontransferable" for reasons wholly unrelated to their actual transferability in the commercial marketplace, for instance reserve and reporting requirements by the Federal Reserve Board.) Unfortunately, the Court was not able to locate controlling authority as to whether Pennsylvania adheres to this majority view.

The above is of more than purely academic interest. If CD 100806034 from July 2005 is properly treated as an instrument, there is insufficient evidence of record at this time to establish that FNB  ever had possession of it so as to perfect its security interest. FNB has submitted "collateral receipts" that appear to show that it did take possession of CDs 100593853 and 100597105 in connection with the July 2004 loan transactions. See *Trustee's Responses to FNB Requests for Admission* 11, 26 (Exhibit Q to FNB's *Motion*, Document No. 85). However, there is nothing of record to demonstrate that FNB took possession of CD 100806034. Moreover, even if possession of CD 100806034 were shown, there might be an additional problem. *13 Pa.C.S.A. §9313(d)* provides that if perfection of a security interest depends upon possession of the collateral by a secured party, perfection occurs "no earlier than the time the secured party takes possession." Since the CD was not in existence until July 27, 2005, that would appear to mark the earliest possible date when FNB could have taken possession of it–well within the one-year look back period.

that there is no evidence that it had actual knowledge of or participated in any fraud and claims that, absent such evidence, the Trustee cannot prevail in his claim under Count III.

As to the first contention, it is undisputed that the Trustee failed to include a claim in the original *Complaint* based on equitable subordination. However, when he filed his *Motion for Summary Judgment* in November 2006, he did include an argument that subordination of FNB's claim might be appropriate under *Section 510. See* Document No. 25 at 8-11. FNB responded to that contention, arguing that the facts of record did not support a claim of equitable subordination. *See* Document Nos. 28, 31. Although FNB also noted that this equitable subordination theory was not set forth in the *Complaint*, FNB did not argue that the Trustee was thereby barred from asserting it. However, when the case was appealed to the District Court, FNB did identify as an issue for appeal whether this Court had erred in permitting the Trustee to raise the equitable subordination argument. *See Appellant's Statement of Issues on Appeal*, Document No. 47 at ¶4. The *District Court Opinion* recognized but declined to address the issue, leaving it for remand.

When the case was remanded, the Trustee was granted leave to file the *Amended Complaint*, which does explicitly include an equitable subordination claim in Count III. The Court finds that the filing of the *Amended Complaint* resolves any possible issue as to whether the Trustee is barred from pursuing this claim because it was not included in the original *Complaint*. FNB has not identified any statute of limitation or other timing question associated with this claim that would require an analysis as to whether this claim "relates back" to the original *Complaint*. Furthermore, discovery has been ongoing, so FNB cannot be said to have been prejudiced by allowing a claim to proceed upon which it had no opportunity to conduct discovery.

20

As to FNB's second contention, the Court agrees that Count III is not artfully pled. The prayer for relief in Count III asks that "the proceeds of CD Account 100806034, plus interest, should be applied against claims filed in this matter and for such other further relief as the court deems just and proper." The first part of this prayer is not an accurate characterization of "subordination," which is an act of altering "the otherwise applicable priority" of a claim. 4 *Collier on Bankruptcy* at ¶ 510.01 (2008). The Court does not believe this is a sufficient reason to dispose of Count III by summary judgment. Paragraph 69 of the *Amended Complaint* (which states: "FNB's claim to CD Account No. 100806034 should be equitably subordinated to those of other creditors") does more accurately set forth the relief, if any, that would be available under Count III. Furthermore, the Court would have the power in any event to *sua sponte* invoke an equitable subordination remedy if warranted by the facts. *See In re Clamp-All Corp.*, 233 B.R. 198, 210-11 (Bankr. D. Mass. 1999).

FNB's final contention is that Count III must be dismissed because there is no evidence that it had actual knowledge of or participated in any fraud. The standard for imposing equitable subordination, even as to non-insider creditors, is not that rigid. The standard is not necessarily one of fraud, but of "inequitable conduct", a more flexible inquiry developed on a case by case basis. *In re Winstar Commuc's, Inc.*, 554 F.3d 382, 411 (3d Cir. 2009). If the creditor is a non-insider, the evidence must show "more egregious conduct such as fraud, spoliation or overreaching." *Id.* at 412. This would seem to be a similar inquiry as with respect to the "good faith" defense under Counts I and II, and for the same reasons as were required previously, summary judgment will be denied here.

21

## CONCLUSION

By the *Amended Complaint* and the *Offer of Proof* the Trustee has essentially alleged that FNB engaged in the loan transactions when, by standards of normal banking practices, it knew or should have known that it was helping to create a false illusion that LAG had more capital then it really did. This "illusion" resulted in the Debtor's business being allowed to continue in existence longer than it would have otherwise, all to the detriment of creditors. The Trustee has submitted some evidence to the effect that Daimler relied on this "illusion" in determining whether LAG was in financial compliance (Document No. 92, Wegerzyn Affidavit, Ex. A), and the Trustee is seeking to take the deposition of Slomski to ask him questions about the transactions. Viewing the evidence in the light most favorable to the Trustee, the Court cannot conclude at this time as a matter of law that fraudulent transfer and/or equitable subordination would not be established under the facts presented.

For the above reasons, FNB's *Motion* will be denied. The Trustee will be permitted to take the deposition of David Slomski. Additionally, the Court will enter a discovery schedule designed to move the case toward trial.

An appropriate Order follows.

Dated: May 14, 2010

Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case Administrator to serve:
John M. Steiner, Esq.
Richard W. Roeder, Esq.
John C. Melaragno, Esq.
James R. Walczak, Esq.